UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------X

DONOVAN KNIGHT,

                    *Plaintiff*,

                                              **MEMORANDUM AND ORDER**
    -against-                                 18-CV-2474 (KAM)


COMMISSIONER OF SOCIAL SECURITY,

                    *Defendant*.

---------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

            Plaintiff Donovan Knight ("plaintiff") appeals the final decision of the Commissioner of Social Security ("defendant" or "Commissioner"), which found that plaintiff was not disabled, and therefore, not entitled to supplemental security income benefits ("SSI") under Title II of the Social Security Act ("the Act").  Plaintiff raises three points of error.  First, plaintiff contends that the ALJ failed to properly weigh the medical opinion evidence.  Second, plaintiff asserts the ALJ failed to properly determine plaintiff's residual functional capacity ("RFC").  Third, plaintiff maintains that the ALJ failed to properly credit plaintiff's testimony regarding his symptoms.

1

For the reasons set forth below, plaintiff's motion for judgment on the pleadings is GRANTED and the Commissioner's motion is DENIED.

## BACKGROUND

The parties to this action have submitted a Joint Stipulation of Facts detailing plaintiff's medical history and the administrative hearing testimony, which the court hereby incorporates by reference.  (*See* ECF No. 21-1, Joint Stipulation of Facts ("Stip.").)

Plaintiff filed an application for SSI on August 12, 2014, alleging a disability onset date of November 1, 2013.  (ECF No. 24, Administrative Transcript ("Tr.") 15.)  His claim was denied on March 13, 2015.  (*Id.* 88-97.)  On March 23, 2015, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (Stip. 1.)  Plaintiff's hearing took place before ALJ Mark Solomon on January 27, 2017.  (*Id.* 2; Tr. 48-77.)  At the hearing, the ALJ heard testimony by plaintiff and Melissa Fass Karlin, a vocational expert ("VE").  (*See generally* Tr. 48-77.)

On April 21, 2017, after the hearing concluded, the ALJ found plaintiff was not disabled.  (*Id.* 12-24.)  On April 26, 2017, plaintiff requested review of the ALJ's decision (*id.* 162), which the Appeals Council denied on March 1, 2018, thus making the ALJ's decision the Commissioner's final action in the

case.  (*Id.* 1-5.)  This appeal followed.  (*See generally* ECF No. 1, Compl.)

## STANDARD OF REVIEW

A claimant must be "disabled" within the meaning of the Act to receive disability benefits.  *See* 42 U.S.C. §§ 423(a), (d).  A claimant qualifies as disabled when she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *Id.* § 423(d)(1)(A); *Shaw v. Chater*, 221 F.3d 126, 131–32 (2d Cir. 2000).  The impairment must be of "such severity" that the claimant is unable to do his previous work or engage in any other kind of substantial gainful work.  42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Commissioner prescribe a five-step sequential evaluation process for determining whether a claimant meets the Act's definition of disabled.  *See* 20 C.F.R. § 404.1520.  The Commissioner's process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that [s]he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in [her] prior type of work, the Commissioner must

3

find [her] disabled if (5) there is not another type
of work the claimant can do.

*Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008) (quoting

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003));

*accord* 20 C.F.R. § 404.1520(a)(4).

"The claimant has the general burden of proving . . .
his or her case at steps one through four of the sequential
five-step framework established in the SSA regulations."
*Burgess*, 537 F.3d at 128 (internal quotation marks and citations
omitted).  "However, [b]ecause a hearing on disability benefits
is a nonadversarial proceeding, the ALJ generally has an
affirmative obligation to develop the administrative record."
*Id.* (internal quotation marks omitted).  "The burden falls upon
the Commissioner at the fifth step of the disability evaluation
process to prove that the claimant, if unable to perform [his]
past relevant work [and considering his residual functional
capacity, age, education, and work experience], is able to
engage in gainful employment within the national economy."
*Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

"The Commissioner must consider the following in
determining a claimant's entitlement to benefits: '(1) the
objective medical facts [and clinical findings]; (2) diagnoses
or medical opinions based on such facts; (3) subjective evidence
of pain or disability . . . ; and (4) the claimant's educational

4

background, age, and work experience.'"  *Balodis v. Leavitt*, 704
F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*,
174 F.3d 59, 62 (2d Cir. 1999) (alterations in original)).  If
the Commissioner finds a combination of impairments, the
Commissioner must also consider whether "the combined effect of
all of [a claimant's] impairment[s]" establish the claimant's
eligibility for Social Security benefits.  20 C.F.R. §
404.1523(c); *see also id.* § 416.945(a)(2).

Unsuccessful claimants for disability benefits may
bring an action in federal court seeking judicial review of the
Commissioner's denial of their benefits.  42 U.S.C. §§ 405(g),
1383(c)(3).  The reviewing court does not have the authority to
conduct a *de novo* review, and may not substitute its own
judgment for that of the ALJ, even when it might have
justifiably reached a different result.  *Cage v. Comm'r*, 692
F.3d 118, 122 (2d Cir. 2012).  Rather, "[a] district court may
set aside the Commissioner's determination that a claimant is
not disabled only if the factual findings are not supported by
'substantial evidence' or if the decision is based on legal
error.'"  *Burgess*, 537 F.3d at 127 (quoting *Shaw*, 221 F.3d at
131 (citation omitted)).  "The substantial evidence standard
means once an ALJ finds facts, we can reject those facts 'only
if a reasonable factfinder would *have to conclude otherwise*.'"
*Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir.

2012) (citations omitted, emphasis in original).  Inquiry into legal error requires the court to ask whether "'the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act.'"  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).

## THE ALJ'S DISABILITY DETERMINATION

Using the five-step sequential process to determine whether a claimant is disabled as mandated by the SSA regulations, the ALJ made the following determinations.

At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since August 12, 2014, the application date.  (Tr. 17.)  At step two, the ALJ found that plaintiff had the severe impairments of lumbar and cervical degenerative disc disease and right knee status post arthroscopic surgery.  (*Id.*)  The ALJ did not find, however, that plaintiff had a medically determinable left shoulder impairment, as reported by Dr. Folk, plaintiff's treating physician.  (*Id.*)  The ALJ explained that (1) the record did not contain any radiographic evidence of a shoulder impairment; (2) the consultative doctors who examined plaintiff in March 2015 and December 2016 did not report any such impairment; and (3) plaintiff did not allege any left shoulder impairment at the January 2017 hearing.  (*Id.*)

6

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 CFR Part 404, Subpart P, App'x 1.  (Tr. 18.)  The ALJ initially considered plaintiff's injuries under 1.04 Disorders of the Spine and 1.02A Major Dysfunction of a Joint, but determined that the record did not establish that plaintiff's impairments met either listing.  (*Id.*)  The ALJ then determined that plaintiff's RFC allowed him to perform light work,[1] "with the following additional limitations: he is limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling."  (*Id.*)  In arriving at this conclusion, the ALJ accorded "limited weight" to the opinions of Dr. Folk, plaintiff's treating physician and "partial weight" to the opinions of Drs. Tranese and Meisel, the consultative examiners, as well as limited weight to plaintiff's statements.  (*Id.* 21-22.)

The ALJ acknowledged that Dr. Folk began treating plaintiff in December 2013 after plaintiff's slip-and-fall. (Tr. 20.)  The ALJ noted that Dr. Folk's CT scan of plaintiff's

_____

[1]    Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 416.967(b).  Light work has been further interpreted to include work that "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." *See* Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).

lumbar spine in January 2014 showed that plaintiff had
"significant" and "severe" spinal impingement, and that Dr. Folk
treated plaintiff with hydro collation physical therapy and pain
medication.  (*Id.*)  Dr. Folk's MRI of plaintiff's cervical
spine, taken in December 2016, further showed that plaintiff had
multiple spinal stenoses and bulging discs.  (*Id.* 21.)  The ALJ
cited Dr. Folk's October 2016 medical report findings that
plaintiff: was unable to stand on heels and toes; had tenderness
and reduced range of motion of the left shoulder and of the
right knee; had numbness and weakness in the right lower
extremity and loss of sensation in the L3-4 distribution; and,
was "totally disabled and unable to work."  (*Id.*)  The ALJ
further cited to Dr. Folk's January 2017 Medical Source
Statement, which reported that plaintiff: could lift ten pounds
occasionally, sit for twenty minutes continuously and for two
hours in an eight-hour workday, and stand/walk for five to ten
minutes continuously and for one hour in an eight-hour workday;
could never operate foot controls; could never reach overhead;
could never push/pull; could never climb stairs, balance, stoop,
kneel, crouch, or crawl, and; could never work in environments
with exposure to respiratory irritants.  (*Id.*)

        The ALJ acknowledged that Dr. Folk was plaintiff's
"long-term treating doctor," and so his opinions were entitled
to controlling weight "if supported by the treatment notes and

there is no substantial evidence to the contrary." (Tr. 22.)
Still, the ALJ accorded Dr. Folk's opinions "limited weight"
because of apparent inconsistencies with other medical evidence
in the record. (*Id.*)  First, Dr. Dowd, the orthopedic surgeon
who performed plaintiff's knee surgery, reported "substantially
normal findings one month following the surgery." (*Id.*)
Second, Dr. Folk diagnosed a shoulder injury and related
limitations in reaching, pulling, and pushing without any
radiographic evidence. (*Id.*)  Third, plaintiff denied having
any musculoskeletal issues during a 2014 hospital visit. (*Id.*)
Fourth, Dr. Folk's indications of the severity of plaintiff's
symptoms were inconsistent with those of Drs. Tranese and
Meisel. (*Id.*)  The ALJ also believed that the "conservative"
nature of Dr. Folk's treatment of plaintiff—that is, the use of
a TENS unit and hot pack with one epidural injection—further
suggested that plaintiff's condition was not as severe as Dr.
Folk claimed. (*Id.*)

Dr. Tranese examined plaintiff once, on March 3, 2015,
and found that plaintiff: was in no acute distress and had
normal gait; did not have a cane and was able to get on and off
the exam table and his chair without difficulty; complained of
back pain but did not mention problems with his right knee;
complained of neck and back pain exacerbated by heavy lifting,
frequent bending, excessive stair climbing, walking long

9

distances, and standing for long periods; did not mention difficulty sitting; and, could perform activities of daily living but needed help with cleaning, laundry, and shopping. (Tr. 19.)  The physical examination showed plaintiff had reduced range of motion, tenderness, and muscle spasm of the cervical and lumbar spines, as well as positive straight leg raising in the supine position.  (*Id.* 19-20.)  An x-ray of the lumbar spine showed disc space narrowing, and an x-ray of the cervical spine showed degenerative changes and an old compression fracture. (*Id.* 20.)  Dr. Tranese concluded that plaintiff had no dexterity issues, was mildly limited in walking long distances, standing long periods, frequent bending, and excess stair climbing, and had mild-to-moderate limitations in heavy lifting.  (*Id.*)  The ALJ accorded the opinions of Dr. Tranese "partial weight" because Dr. Tranese "performed a one-time examination and did not cite exact specific limitations."  (*Id.* 22).  Still, the ALJ asserted that the limitations Dr. Tranese did cite were supported by his examination findings.  (*Id.*)

Dr. Meisel examined plaintiff once on December 8, 2016.  (Tr. 20.)  The ALJ noted the following of Dr. Meisel's findings: that plaintiff was in no acute distress; that plaintiff had a cane without which he could walk normally; and, that plaintiff could get on and off the exam table and his chair without difficulty.  (*Id.*)  He also found right knee crepitus

10

and some quadriceps atrophy.  (*Id.*)  Dr. Meisel concluded that plaintiff could carry up to twenty pounds frequently, sit for seven hours straight and eight hours in an eight-hour workday, do postural activities like stooping and kneeling frequently, and could operate foot controls and do reaching, handling, fingering, feeling, and pushing/pulling frequently.  (*Id.*)  The ALJ accorded the opinions of Dr. Meisel "partial weight" because Dr. Meisel "performed a one-time examination and reported essentially a normal examination concerning the back and neck, and mild findings regarding the right knee."  (*Id.* 22.)  The ALJ believed that plaintiff had greater limitations than Dr. Meisel postulated, and supposedly incorporated such limitations into his RFC finding.  (*Id.*)

Lastly, the ALJ considered plaintiff's testimony and Function Report in arriving at his RFC determination.  (Tr. 19.) The ALJ noted plaintiff's testimony that he injured his neck and back in a slip-and-fall in December 2013, and thereafter used a back brace and received heating pad treatment and an epidural injection from Dr. Folk.  (*Id.*)  The ALJ further noted plaintiff's testimony that he injured his right knee from a fall in January 2015, for which he had surgery.  (*Id.*)  Finally, the ALJ noted plaintiff's testimony that he could travel alone and take care of his personal needs, used a cane mostly for walking outdoors, could sit for one-half hour and stand for five

11

minutes, and had no problems using his hands or fingers.  (*Id.*)
The ALJ also considered plaintiff's Function Report from
February 2015, in which plaintiff indicated that he could not
lift anything heavy or stand or walk too long but did not
affirmatively state any limitations with respect to sitting,
climbing, kneeling, squatting, crouching, or reaching.  (*Id.*)

The ALJ found that plaintiff's statements "concerning
the intensity, persistence, and limiting effects of [his]
symptoms [were] not entirely consistent with the medical
evidence and other evidence in the record."  (Tr. 21.)  The ALJ
believed that plaintiff's claims regarding his difficulty
sitting, standing, and walking, and his need of a cane to be
inconsistent with the record.  (*Id.* 22)  First, the ALJ found no
record of plaintiff complaining of difficulty sitting prior to
his testimony at the hearing.  (*Id.*)  Second, plaintiff could
travel alone on public transport, which, according to the ALJ,
required considerable stair-climbing and standing/walking, and
plaintiff's physical exams showed he was neurologically intact
with no pain standing or walking.  (*Id.*)  Third, the ALJ
remarked that Dr. Dowd found that plaintiff, two weeks after
knee surgery, had full passive range of motion of his knee with
pain on extremes and that he was neurovascularly intact with
full strength, and that plaintiff did not have a cane during his
consultation with Dr. Tranese.  (*Id.*)  Additionally, the ALJ

12

found it probative that plaintiff represented himself as "able" to work to the New York State Department of Labor in order to collect unemployment benefits in the first and second quarters of 2014. (*Id.* 21-22)

Following the ALJ's determination of plaintiff's RFC, the ALJ concluded at step four that plaintiff was unable to perform any past relevant work. (Tr. 23.)  Plaintiff had previously worked as a Groundskeeper, which imposed medium exertional demands, but the ALJ deemed plaintiff limited to light work. (*Id.*)  Finally, at step five, the ALJ concluded that given plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that plaintiff could perform. (Tr. 23.)  The VE, supplied with the above information, determined that plaintiff could perform the requirements of representative occupations such as Cashier, Routing Clerk, and Mail Clerk. (*Id.* 23-24.)  The VE further determined that an individual of plaintiff's description limited to sedentary work with the same postural limitations could perform the requirements of a Charge Account Clerk, Order Clerk, and Call-out Operator. (*Id.* 24.)

## DISCUSSION

Plaintiff contends that the ALJ failed to properly weigh the medical opinion evidence, failed to properly determine plaintiff's RFC, and failed to properly evaluate plaintiff's

testimony. (*See generally* ECF No. 19.)  The court agrees and
addresses each claim below.

### I.   **The ALJ Failed to Properly Weigh the Medical Opinion Evidence**

"[A]n ALJ should defer to 'to the views of the
physician who has engaged in the primary treatment of the
claimant.'"  *Cichocki v. Astrue*, 534 F. Appx. 71, 74 (2d Cir.
2013) (quoting *Green-Younger*, 335 F.3d at 106).[2]  "However, '[a]
treating physician's statement that the claimant is disabled
cannot itself be determinative.'"  *Id.* (quoting *Snell v. Apfel*,
177 F.3d 128, 133 (2d Cir. 1999)).  "Rather, 'a treating
source's opinion on the issue(s) of the nature and severity of
[a claimant's] impairment(s)' will be given 'controlling weight'
if the opinion is 'well-supported by medically acceptable
clinical and laboratory diagnostic techniques and is not
inconsistent with the other substantial evidence in [the
claimant's] case record.'"  *Id.* (quoting 20 C.F.R. §
404.1527(c)(2)).

"An 'ALJ who refuses to accord controlling weight to
the medical opinion of a treating physician must consider

---

[2]     The Commissioner has revised its rules to eliminate the treating
physician rule, and ALJs are now to weigh all medical evaluations, regardless
of their sources, based on how well supported they are and their consistency
with the remainder of the record.  *See* 20 C.F.R. §§ 404.1520b; 416.920c.
Claims filed before March 27, 2017, however, are still subject to the
treating physician rule.  *See id.* § 404.1527(c)(2).  Plaintiff filed his
claim on August 12, 2014.  Accordingly, the court applies the treating
physician rule in the instant case.  *See, e.g.*, *Conetta v. Berryhill*, 365 F.
Supp. 3d 383, 395 n.5 (S.D.N.Y. 2019).

various factors to determine how much weight to give to the opinion,' including: '(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.'" *Id.* (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)). "The ALJ must then 'comprehensively set forth his reasons for the weight assigned to a treating physician's opinion.'" *Id.* (quoting *Burgess*, 537 F.3d at 129). The regulations also require that the ALJ "always give good reasons" in determining the weight assigned to the claimant's treating source's opinion. *See* 20 C.F.R. § 416.927(c)(2); *see also Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998). The ALJ is not required to cite each factor explicitly in his decision, but must ensure he applies the substance of the rule. *Halloran*, 362 F.3d at 32.

Although the ALJ duly acknowledged that Dr. Folk was plaintiff's treating physician (*see* Tr. 17), the ALJ erred by assigning merely limited weight to Dr. Folk's assessment of plaintiff's impairments without further explanation. In his decision, the ALJ acknowledged the existence of the MRI, CT scans, and physical examination that Dr. Folk administered, and

15

recited their essential findings. (*Id.* 20-21.)  Notwithstanding
the ALJ's acknowledgement, his decision did not set forth a
reasoned basis for disregarding the radiological evidence
underlying Dr. Folk's opinion—the CT scan of plaintiff's lumbar
spine, which revealed "significant" and "severe" spinal
impingements; the MRI of plaintiff's cervical spine, which
showed that plaintiff had multiple spinal stenoses and bulging
discs (*id.* 20); and plaintiff's physical examination, which was
"notable for evidence of significant pain with motion that was
limited in all directions, tenderness from C3-D1, decrease in
the normal cervical lordosis, and minimal spasms."  (Stip. 5-6.)
The ALJ also failed to cite to any medical authority in the
record who opined that the objective radiological findings and
conditions documented by Dr. Folk could not cause the
restrictions in sitting, standing, and walking identified by the
treating doctor.

     The ALJ improperly minimized the weight of Dr. Folk's
assessment based on apparent flaws with Dr. Folk's assessments,
and inconsistencies with the consultative examiners' findings.
Here, each consultative examiner saw plaintiff but once, and
there is no indication that either Dr. Tranese or Dr. Meisel's
opinions incorporated any consideration of Dr. Folk's MRI or CT
scans of plaintiff's spine and knee, or that either doctor
administered a radiological examination of their own.  (*See*

16

Stip. 9-10 nn.9, 10.)  As an initial matter, "ALJ's should not
rely heavily on the findings of consultative physicians after a
single examination." *Selian v. Astrue*, 708 F.3d 409, 419 (2d
Cir. 2013).  An "ALJ cannot rely solely on [the] RFCs [of the
consulting examiners] as evidence contradicting the treating
physician RFC. This is because an inconsistency with a
consultative examiner is not sufficient, on its own, to reject
the opinion of the treating physician." *Cammy v. Colvin*, No.
12-CV-5810, 2015 WL 6029187 *14 (E.D.N.Y. Oct. 15, 2015)
(quoting *Donnelly v. Comm'r of Soc. Sec.,* 49 F.Supp.3d 289, 305
(E.D.N.Y. 2014)).

        In addition, the Second Circuit has noted that, where
a consulting examiner's report fails to consider critical
radiological evidence, that physician's opinion does not
constitute substantial evidence sufficient to deny controlling
weight to a treating physician's opinion. *See Burgess*, 537 F.3d
at 132 (opinions of consultative physicians who did not read
plaintiff's MRI report, or otherwise "betray[ed] a lack of
awareness" of MRI report, were not substantial evidence).  Here,
plaintiff told Dr. Meisel that an MRI of his spine showed
"slipped discs," and that an MRI of his knee (prior to
arthroscopic surgery) showed a torn right knee ligament.  (Stip.
9.)  And yet, without consulting the relevant imaging results,
Dr. Meisel concluded that plaintiff had cervical back pain of

17

"etiology unknown" and "rule[d] out mild osteoarthritis" of plaintiff's right knee.  (*Id.* 10.)  Further, plaintiff told Dr. Tranese that he had "cervical and lumbar disc herniations." (*Id.* 9.)  Dr. Tranese—again, without consulting the actual imaging and "based on the limited evidence available"—concluded that plaintiff had "mild-to-moderate" movement limitations. (*Id.*)  The ALJ failed to explain how either consultative examiner report undermined Dr. Folk's assessment of plaintiff's limited ability to sit, walk, or stand, given the failure of each to consider radiological evidence to the contrary.

Purported flaws or internal inconsistencies in Dr. Folk's report do not merit the ALJ's decision to assign less-than-controlling weight to his opinion.  First, even if Dr. Folk incorrectly reported a shoulder impairment diagnosis based on radiological imaging of plaintiff's shoulder, that would not undermine Dr. Folk's conclusion—based on spinal imaging—that plaintiff had sharply diminished capacity to sit, stand, and walk.  Second, plaintiff's failure to report musculoskeletal complaints during a one-off visit to the Brooklyn Hospital Center emergency department is readily explained by the purpose for his visit, sexually transmitted disease testing, which would not have necessarily required plaintiff to report musculoskeletal impairments.  Third, the ALJ improperly concluded that Dr. Folk's "conservative" course of treatment

18

indicated that plaintiff's condition was not as severe as Dr. Folk reported.  *See Burgess*, 537 F.3d 117 at 129 ("Nor is the opinion of the treating physician to be discounted merely because he has recommended a conservative treatment regimen.") (citing *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)).

Accordingly, the ALJ improperly gave the opinions of Dr. Folk less-than-controlling weight.  On remand, the ALJ is directed to consider Dr. Folk's MRI and CT scans on plaintiff's lumbar and cervical spine in determining the weight of Dr. Folk's opinion.  If the ALJ nonetheless determines that Dr. Folk's opinion is not entitled to controlling weight, the ALJ must nonetheless articulate a basis for the alternative weight assigned.  The ALJ is reminded that treating physician assessments are "entitled to some extra weight, even if contradicted by substantial evidence, because the treating source is inherently more familiar with a claimant's medical condition than are other sources." *Schisler v. Sullivan*, 3 F.3d 563, 570 (2d Cir. 1993).

## II.  The ALJ Failed to Properly Determine Plaintiff's Residual Functional Capacity

In assessing a claimant's RFC, the ALJ must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . .  Only after that may RFC be expressed in

terms of the exertional levels of work, sedentary, light,
[etc.]." *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330,
348–49 (E.D.N.Y. 2010) (citing SSR 96-8p, 1996 WL 374184, at *1
(July 2, 1996)).  "The Act's regulations require that the ALJ
include in his RFC assessment a function-by-function analysis of
the claimant's functional limitations or restrictions and an
assessment of the claimant's work-related abilities on a
function-by-function basis." *Palascak v. Colvin*, No. 1:11-CV-
0592 (MAT), 2014 WL 1920510, at *10 (W.D.N.Y. May 14, 2014)
(internal quotation marks and citation omitted).  This means
that "the ALJ must make a function[-]by[-]function assessment of
the claimant's ability to sit, stand, walk, lift, carry, push,
pull, reach, handle, stoop, or crouch, based on medical reports
from acceptable medical sources that include the sources'
opinions as to the claimant's ability to perform each activity."
*Knighton v. Astrue*, 861 F. Supp. 2d 59, 66 (N.D.N.Y. 2012)
(citations omitted); 20 C.F.R. §§ 404.1513(c)(1), 404.1569a(a),
416.913(c)(1), 416.969a(a).  Thereafter, "[t]he claimant's RFC
can be expressed in terms of the exertional levels of work,
sedentary, light, medium, heavy, and very heavy." *Young v.
Colvin*, No. 15-CV-344-FPG, 2016 WL 5661723, at *3 (W.D.N.Y.
Sept. 30, 2016) (citing *Knighton*, 861 F. Supp. 2d at 66)).

        Here, the ALJ concluded that plaintiff was capable of
light work notwithstanding Dr. Folk's opinion—which the ALJ

accorded merely "limited" weight despite its basis in compelling radiological evidence—that plaintiff could only sit for twenty minutes continuously and for two hours in an eight-hour workday, and stand/walk for five to ten minutes continuously and for one hour in an eight-hour workday.  (Tr. 18.)  The walking and standing capability for "light work" is "frequent," which is defined as "off and on, for a total of approximately 6 hours of an 8-hour workday . . . Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk."  SSR 83-10, 1983 WL 31251, at *6.  According to Dr. Folk, plaintiff is limited to a *maximum* of one hour of standing or walking a day.  (Stip. 6.)  Had Dr. Folk's opinion been accorded more than "limited" weight, it is doubtful a properly-reasoned RFC would have determined plaintiff capable of light work.  *See Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) ("The full range of light work requires intermittently standing or walking for a total of approximately 6 hours of an 8-hour workday, with sitting occurring intermittently during the remaining time.").

Accordingly, the ALJ is directed on remand to revise plaintiff's RFC, taking into due consideration Dr. Folk's assessment of plaintiff's ability sit, walk, or stand, and the radiological evidence upon which that opinion was based.

21

### III. The ALJ Failed to Properly Evaluate Plaintiff's Testimony

An ALJ evaluating a claimant's subjective complaints of pain must first decide "whether the claimant suffers from a medically determinable impairment[ ] that could reasonably be expected to produce the pain alleged."  20 C.F.R. § 404.1529(c). Second, the ALJ must "evaluate the intensity and persistence of those symptoms considering all of the available evidence."  *Id.* If the claimant's "pain contentions are not substantiated by the objective medical evidence," the ALJ must assess the claimant's credibility.  *Id.*  "Remand is appropriate where an ALJ does not follow these steps."  *Peck v. Astrue*, No. 07-CV-3762 (NGG), 2010 WL 3125950, at *4 (E.D.N.Y. Aug. 6, 2010).

Although the ALJ acknowledged that plaintiff's "medically determinable impairments could reasonably be expected to produce the . . . alleged symptoms," the ALJ found plaintiff's statements at the hearing concerning the intensity, persistence, and limiting effects of his impairments were "not entirely consistent with the medical evidence and other evidence in the record."  (Tr. 21.)  Specifically, the ALJ found plaintiff's account incongruous because: plaintiff represented he was "able" to work in order to obtain unemployment benefits from the New York State Department of Labor; plaintiff testified to difficulty sitting but purportedly did not make such a complaint at another time; plaintiff could travel alone on

22

public transportation, which presumably required considerable stair climbing, walking, and standing; plaintiff was neurologically intact; and, plaintiff did not seem to require the use of a cane.  (*Id.* 21-22.)  The court disagrees, and holds the ALJ's reasons for finding plaintiff's testimony inconsistent with the record were erroneous for the following reasons.

First, the fact that plaintiff presented himself as "able" to work in order to obtain unemployment benefits is not dispositive.  *See Ginsberg v. Astrue*, No. 05-CV-3696, 2008 WL 3876067 *17 (E.D.N.Y. Aug. 18, 2008) (arguing that receipt of unemployment benefits alone "does not constitute substantial evidence of plaintiff's general lack of credibility").  Specifically, there is no evidence as to what kind of work plaintiff had in mind; without more, it is unclear how the ALJ could have reasonably concluded that plaintiff believed he was able to perform "light work," rather than a "sedentary" function.

Second, plaintiff did not only testify to having problems sitting, but also put a mark next to "Sitting" on his Function Report when asked to "[e]xplain how your illnesses, injuries, or conditions affect any one of the following."  (Tr. 205.)  Just above, he indicated that he "can't lift anything heavy," "can't stand too long," and "can't walk to [sic] long." (*Id.* 204.)  Though plaintiff may not have mentioned difficulties

23

sitting during his examinations with Drs. Tranese and Meisel, the ALJ incorrectly stated that plaintiff did not register complaints about sitting prior to his hearing testimony.

Third, based on plaintiff's testimony that he "can travel alone on public transportation" (Tr. 22), the ALJ speculated that plaintiff also was capable of spending a considerable amount of time stair climbing, walking, and standing.  (Tr. 22.)  But this assumption does not directly follow, and the ALJ did not adduce testimony by plaintiff regarding the duration or nature of his transportation, or the pain caused by any resulting stair climbing, walking, or standing.  (*See generally id.* 63.)  Further, Dr. Folk stated that plaintiff had severe difficulty using public transportation.  (*Id.* 311.)

Fourth, contrary to the ALJ's claim, the plaintiff did have documented neurological abnormalities.  Dr. Folk determined, based on radiological evidence and frequent, multi-year observation, that plaintiff had numbness and weakness in the legs with abnormal gait and decreased sensation in the right leg.  (Tr. 296-97.)  Plaintiff also told Dr. Tranese that he had intermittent numbness and tingling in his fingers and legs. (*Id.* 246.)

The court acknowledges some inconsistency between plaintiff's testimony and the medical evidence regarding his

need for a cane.  Specifically, plaintiff represented that he used a cane, but did not bring a cane to his exam with Dr. Tranese and was able to walk normally without a cane at his exam with Dr. Meisel.  (Stip. 9, 10.)  Taken alone, however, this discrepancy hardly provides a sufficient basis to find plaintiff's testimony inconsistent with the balance of the objective medical evidence on record.  Indeed, cherry-picking this one inconsistency from the whole record as a basis for denying plaintiff disability benefits runs afoul of the ALJ's mandate, and, along with the errors noted above, warrants remand.  *See Clarke v. Colvin*, 15 Civ. 354 (KBF), 2017 WL 1215362, at *9 (S.D.N.Y. Apr. 3, 2017) ("[T]he ALJ selectively relied on evidence that weighed against a finding of a disability.  This is improper—an ALJ may not 'pick and choose evidence which favors a finding that the claimant is not disabled.'") (quoting *Rodriguez v. Astrue*, 07 Civ. 534 (WHP)(MHD), 2009 WL 637154, at *25 (S.D.N.Y. Mar. 9, 2009)); *accord Meadors v. Astrue*, 370 Fed. Appx. 179, 185 n.2 (2d Cir. 2010) (summary order) (the ALJ "cannot simply selectively choose evidence in the record that supports his conclusions . . . .") (internal quotation marks omitted); *Kebreau v. Astrue*, No. 11 CV 13 (RJD), 2012 WL 3597377 at *2 (E.D.N.Y. Aug. 20, 2012); *Cruz v Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004).

In sum, the court finds that the ALJ failed to properly evaluate plaintiff's testimony and remands with the directive that the ALJ consider plaintiff's testimony under the standard set forth by 20 C.F.R. § 404.1529(c), and in conformity with this Memorandum and Order.

## CONCLUSION

Federal regulations explicitly authorize a court, when reviewing decisions of the SSA, to order further proceedings when appropriate.  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir. 1999) (quoting *Pratts v. Charter*, 94 F.3d 34, 39 (2d Cir. 1996) (internal quotation marks omitted).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *Pratts*, 94 F.3d at 39.

For the reasons set forth above, the court grants plaintiff's motion for judgment on the pleadings; denies defendant's cross-motion for judgment on the pleadings; and remands this case for further proceedings consistent with this

Memorandum and Order.  The Clerk of Court is respectfully directed to close this case and enter judgment in favor of plaintiff.

**SO ORDERED.**

Dated:     June 10, 2020
           Brooklyn, New York

```
                                        /s/
```
                                   **HON. KIYO A. MATSUMOTO**
                                   United States District Judge
                                   Eastern District of New York